**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLES WILLIAMS,** | ) | |
| **Plaintiff,** | ) | **Civil Action No. 10-19 Erie** |
| | ) | |
| **v.** | ) | |
| | ) | **District Judge Sean J. McLaughlin** |
| **STATE CORRECTIONS OFFICERS** | ) | |
| **ASSOCIATION, et al.,** | ) | **Magistrate Judge Susan Paradise Baxter** |
| **Defendants.** | ) | |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I.    RECOMMENDATION

It is respectfully recommended that the Motion to Dismiss filed by the Commonwealth Defendants [ECF No. 17][1] be granted in part and denied in part and the Motion to Dismiss filed by Defendants Bashline, Gilreath, Mowry and Telega [ECF No. 18] be granted in part and denied in part.

More specifically, the Commonwealth's motion to dismiss [ECF No. 17] should be:

- Denied on the basis of res judicata;

- Granted as to the state law claims on the basis of sovereign immunity;

- Denied as to the Eighth Amendment ETS Claims involving contemporaneous injury and granted as to the Eighth Amendment ETS claims involving future injury;

---

[1]  The nineteenth edition to The Bluebook: A Uniform System of Citation (Columbia Law Review Ass'n, et al. eds., 19th ed. 2010) provides citation form for court documents filed with the Electronic Case Management system of the federal courts.  Rule B7.1.4.  Although The Bluebook advises pinpoint citation to a document's original page number, this Court finds its practice of citing to the page number contained in the PACER header more efficient and will continue its prior practice of citing to that page number herein.

- Granted as to the claim about the denial of a massage therapist and/or chiropractor, but denied as to the remaining Eighth Amendment medical claims;

- Granted as to both the Eighth Amendment claims and the due process claims based upon Plaintiff's confinement in RHU;

- Granted as to the due process claims based upon the confiscation or loss of Plaintiff's personal property;

- Granted as to the access to courts claims – which means that Defendants Vogus, Zarnick, Martin, Heckler, Clayton, Lantz, Bickel and Rozcinski should be terminated from the docket;

- Granted as to the harassment claims;

- Granted as to the Equal Protection claims;

- Denied as to the retaliation claims;

- Denied as to the civil conspiracy claims; and

- Granted as to Defendants Adams, Sobina, Varner and Watson on the basis of respondeat superior.

The Medical Defendants' motion to dismiss [ECF No. 18] should be:

- Denied on the basis of res judicata;

- Denied on the basis of the Rooker-Feldman doctrine;

- Denied as to the Eighth Amendment medical claims;

- Denied as to the civil conspiracy claims;

- Denied as to the retaliation claims; and

- Granted as to the dismissal of the state law negligence claims on the basis of Plaintiff's failure to file a certificate of merit.

## II. REPORT

### A. Relevant Procedural History

Plaintiff, a state prisoner, acting pro se, filed this civil rights action under 42 U.S.C. §

1983.   Plaintiff alleges that:

> " Defendants with deliberate indifference involuntarily exposed the Plaintiff to levels of ETS [or environmental tobacco smoke] that posed an unreasonable risk of serious damage to his current/future health in violation of the Eighth Amendment of the U.S. Constitution, conspired to cover up the fact that the plaintiff had gotten sick as a result of the Defendants exposing him to the poisonous toxins from their tobacco smoke on the non-smoking housing unit that he was housed on, discriminated against the Plaintiff on the base [sic] of his race in violation of the Fourteenth Amendment of the U.S. Constitution, and retaliated against the Plaintiff for exercising his First Amendment right of the U.S. Constitution in violation of the First and Fourteenth Amendment of the U.S. Constitution.  The Plaintiff also alleges the torts of negligence, gross negligence, recklessly endangering another person, attempted murder, torture, ethnic intimidation, nuisance, official oppression, harassment, malicious mischief, civil conspiracy, criminal conspiracy, disorderly conduct, abuse of authority, breach of contract, breach of duty, mental anguish, emotional distress, humiliation, engagement in organized criminal activity, theft, receiving stolen property, falsifying reports, and etc."

ECF No. 6, page 3.  The complaint covers the time period from January through August 2008.

Named as Defendants to this action are: The State Corrections Officers Association; Jeffrey Beard; Marilyn Brooks; Raymond Sobina; Nancy Giroux; Richard Hall; Melinda Adams; Maxine Overton; Rebecca Kessler; Roderic A. Showers; Michael Brumagin; Correctional Officer Gilmore; Correctional Officer Dhappart; Sgt. Christopher; Correctional Officer Joseph Saraceno; Sgt. Little; Correctional Officer Hong; Cindy G. Watson; Correctional Officer Harmon; Correctional Officer Rieger; Sgt. Carr; Officer Hickman; Ronald Bryant; Sherman Morrison; Major Gilmore; Sgt. Stull; Lt. McConnell; Correctional Officer Abreu; Sgt. Bowen; Correctional Officer Skindale; Sgt. Edmunds; Correctional Officer Hunt; Physician's Assistant Tammy Mowry; Dr. David Bashline; Captain White; Steven Reilly; Ms. Larson; Correctional Officer Harvey; Mr. Barco; Mr. Waid; Ms. Jackson; Ms. Daniels; Sgt. Melec; Lt. Gilbert; Albert Williams; Alfred Sparks[2]; Mr. Patz; Physician's Assistant Daniel Telega; Harold Heckler; Gene Zarnick; Sgt. Martin; Jason Vogus; Kevin Lantz; Michael Clark; Sgt. Clayton; Dorina Varner;

---

[2]  Defendants Williams and Sparks are identified as fellow inmates.

Christine Zirkle; Nurse Doe; Correctional Officer Rodrigues; Correctional Officer B.S. Sommers; Dr. Longstreeet; Dr. Valerie Gilreath; Tracy Pollock; Ms. Bickel; and Ms. Roscinski. Defendants Bashline, Gilreath, Mowry and Telega are represented by private counsel, while the remaining served Defendants are represented by the Office of the Attorney General.

The docket reflects that the following named Defendants have not been served: The State Corrections Officers Association; Albert Williams; Alfred Sparks; and Dr. Longstreet.

Presently pending before this Court are two dispositive motions, one filed by the Commonwealth Defendants, and one filed by Defendants Bashline, Gilreath, Mowry and Telega. ECF Nos. 17, 18.

## B. Standards of Review

### 1) Pro Se Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521(1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g.,

Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

### 2)     Motion to dismiss pursuant to 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) quoting Iqbal, ___ U.S. at ___, 129 S.Ct. at 1949 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.

2004).  Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face."  Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief."  Smith v. Sullivan, 2008 WL 482469, at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).  "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."  Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

Recently, the Third Circuit expounded on the Twombly/Iqbal/Phillips line of cases:

> To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible.  This then 'allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.'
>
> * * *
>
> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.  **First, the factual and legal elements of a claim should be separated.  The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.**  A complaint has to 'show' such an entitlement with its facts.  As the Supreme Court instructed in Iqbal, '[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief.'  This 'plausibility' requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11(3d Cir. 2009) (emphasis added) (internal citations omitted).

### C.  The Doctrine of Res Judicata

All Defendants move for dismissal on the basis of res judicata, while Plaintiff counters that the doctrine does not apply to this federal action.

The doctrine of claim preclusion (traditionally known as res judicata) precludes "a party from initiating a second suit against the same adversary based on the same 'cause of action' as the first suit."  Duhaney v. Attorney Gen. of the United States, ___ F.3d ___, ___, 2010 WL 3547434, at * 6 (3d Cir. Sept.4, 2010) citing In re Mullarkey, 536 F.3d 215, 255 (3d Cir. 2008). "Res judicata is not a jurisdictional bar, but rather is an affirmative defense that prohibits litigation between the same parties on a cause of action that was previously adjudicated on its merits."  Briar Meadows Dev., Inc. v. South Centre Twp.  Bd. of Supervisors, 2010 WL 4024775, at * 6 (M.D. Pa. Oct. 13, 2010).  See also Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 170 (3d Cir. Aug.5, 2010) ("Importantly, preclusion is not jurisdictional.").

A federal court applying preclusion principles is bound by the Full Faith and Credit statute, 28 U.S.C. § 1738, and must give a prior state court judgment the same effect as would the adjudicating states.  Haring v. Prosise, 462 U.S. 306, 313 (1983) citing Allen v. McCurry, 449 U.S. 90, 96 (1980).  See also Salley v. Rendell, 2008 WL 1752246, at * 5 n.9 (W.D. Pa. 2008) (highlighting difference between federal common law doctrine of claim preclusion and claim preclusion doctrine under state law).  In other words, federal courts must "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged."  Allegheny Intern., Inc. v. Allegheny Ludlum

Steel Corp., 40 F.3d 1416, 1429 (3d Cir.1994).  Therefore, Pennsylvania state law regarding claim preclusion must be applied to the case at bar.

"Any final, valid judgment on the merits by a court of competent jurisdiction precludes any further suit between the parties or their privies on the same cause of action." Turner v. Crawford Square Apts. III, L.P. , 449 F.3d 542, 548 (3d Cir. 2006) quoting Balent v. City of Wilkes-Barre, 669 A.2d 309, 313 (1995).  "In order for res judicata to apply, there must (1) be a valid, final judgment on the merits in the prior action, (2) the same parties in both actions, and (3) the claim in the second action must arise out of the same transaction as the claim in the first action." Alliance Shippers, Inc. v. Blue Line Distrib., Ltd. , 2010 WL 2951448, at * 2 (D.N.J. July 22, 2010) quoting United States v. 5 Unlabeled Boxes, 572 F.3d 169, 172 (3d Cir. 2009). [3] See also McKenna v. City of Philadelphia, 304 Fed. Appx 89, at *4 (3d Cir. 2008) ("[R]es judicata and collateral estoppel apply only to final judgments.").

Here, prior to filing the instant federal action, Plaintiff filed a similar lawsuit in the Court of Common Pleas of Erie County around May 4, 2009.  In support of their respective motions to dismiss, Defendants have provided this Court with a copy of that complaint. [4]  See ECF No. 19-

---

[3]  Under Pennsylvania law, in order for the doctrine of claim preclusion to prevent relitigation of the claim, the two actions must share the following conditions: "(1) the thing sued upon or for; (2) the cause of action; (3) the persons and parties to the action; and (4) the capacity of the parties to sue or be sued." Turner, 449 F.3d at 548, citing Bearoff v. Bearoff  Bros., Inc., 458 Pa. 494 (1974).  See also Michaels v. Pimlico Realty Co., 2004 WL 2457735, at *3 (E.D. Pa.) citing In re Iulo, 766 A.2d 335, 337 (Pa. 2001) (there must be: (1) identity of issues; (2) identity of causes of action; (3) identity of persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or being sued in the two cases.).

[4]  The use of these exhibits by this Court does not convert Defendants' motion to dismiss for failure to state a claim into a motion for summary judgment.  Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002) ("...certain matters outside the body of the complaint itself, such as exhibits attached to the complaint and facts of which the court will take judicial notice, will not trigger the conversion of an Federal Rule of Civil Procedure 12(b)(6) motion to dismiss to an  Federal Rule of Civil Procedure 56 motion for summary judgment."); Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992).

2. A review of these documents reveals that the complaint in this action and the complaint filed in the Court of Common Pleas are remarkably similar. However, Plaintiff argues that the doctrine of claim preclusion cannot apply here because there was no final adjudication on the merits in the prior case.

More specifically, Plaintiff argues that at a show cause hearing before the Court of Common Pleas, he voluntarily dismissed the case "on March 1, 2010, after he realized that Judge Michael E. Dunlavey was not going to give him a full and fair hearing on the merit of his claims." ECF No. 47, pages 3-5. Plaintiff indicates that at that hearing, Judge Dunlavey failed to strike the untimely preliminary objections of the Defendants and that Judge Dunlavey made derogatory statements about having Plaintiff criminally charged due to the submission of evidence in that case. Id.

Only some of the documents associated with the Court of Common Pleas case have been submitted to this Court. Importantly, for the purposes of this Court's analysis on the pending motions to dismiss, there is no transcript of the March 1, 2010 hearing held before Judge Dunlavey. Res judicata is an affirmative defense which must be proven by Defendants. See Fed. R. Civ. P. 8(c)(a); Briar Meadows, 2010 WL 4024775, at * 6. Here, Defendants have not met their burden in this regard. Although they have provided this Court with the Court of Common Pleas complaint and some of the filings in that case[5], Plaintiff's claim that he

---

[5] The April 2010 order indicates that:

> "the complaint is dismissed with prejudice as being frivolous litigation pursued only to harass the Defendants and to further clog the Court's pursuit to administer justice to those in need of adjudication. The Court stands on the briefs of the Defendant in this matter. The Court further stands on the record of the Oral Argument held March 1, 2010 regarding the issues raised by Defendants and any further argument made by Plaintiff."

voluntarily withdrew his complaint (based upon Judge Dunlavey's allegedly prejudicial remarks) creates question as to whether there is a final judgment sufficient to support a finding of res judicata in this Court.

Accordingly, a decision on the issue of res judicata is premature on this limited record and the motions to dismiss should be denied. This issue may be revisited in the future upon a more complete record.

### D. The Rooker-Feldman Doctrine

Next, the Medical Defendants argue for dismissal based upon the Rooker-Feldman doctrine. Specifically, in their short and curt legal discussion, they argue that the doctrine "precludes this Court from modifying a state court judgment. To the extent Williams is complaining of injuries caused by the Erie County decision, said claims would be barred." ECF No. 19, page 4. Even liberally construing the allegations of the pro se litigant, no allegations can be inferred as complaining of injuries cause by the Erie County decision.

The Rooker-Feldman doctrine is derived from 28 U.S.C. § 1257 and the understanding that "a United States District Court has no authority to review judgments of a state court in judicial proceedings. Review of such judgments may be had only in the [United States Supreme] Court." District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983). The United States Supreme Court has summarized the doctrine:

> The Rooker-Feldman doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

---

ECF No. 20-4, page 2. It appears that Plaintiff also filed a "Motion for Reconsideration" in the Court of Common Pleas around April 29, 2010. ECF No. 47-2, page 41.

Exxon Mobil Corp. et al. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005). See also

Rooker v. Fidelity Trust, 263 U.S. 413, 416 (1923) and Feldman, 460 U.S. 462. "If it were

otherwise, any person dissatisfied with a state ... award could seek review in the district court

under the guise of a federal civil rights violation." Marran v. Marran, 2003 WL 21448868, at * 8

(E.D.Pa. 2003) quoting Logan v. Lillie, 965 F.Supp. 695, 695 (E.D. Pa. 1997).

 Following the Supreme Court's decision in Exxon Mobil, the Third Circuit explained that

the doctrine

> bars the lower federal courts 'from entertaining an action... if the relief requested
> effectively would reverse a state court decision or void its ruling. Accordingly,
> the *Rooker-Feldman* doctrine creates a jurisdictional bar where the federal claim
> was 'actually litigated' in state court or where the federal claim is 'inextricably
> intertwined' with a previous state-court judgment.

Gordon v. East Goshen Twp., 2009 WL 69878 (E.D. Pa. Jan. 13, 2009) quoting Taliaferro v.

Darby Twp. Zoning Bd., 458 F.3d 181, 192 (3d Cir. 2006).

 Again, at this initial stage of the litigation on the limited record and argument before this

Court, it is impossible to determine whether there was actual litigation or a previous state court

judgment. Accordingly, the Rooker-Feldman doctrine does not provide a basis for dismissal of

the claims against the Medical Defendants and their motion to dismiss should be denied in this

regard. This issue may be revisited in the future upon a more complete record.


**E.  Sovereign Immunity – State Law Claims Only**

 Next, the Commonwealth Defendants argue for dismissal of Plaintiff's state law claims

based upon sovereign immunity.

 The Eleventh Amendment proscribes actions in the federal courts against states, their

agencies, and state officials acting within their official capacities. Betts v. New Castle Youth

Development Center, 621 F.3d 249, 254 (3d Cir. Sept.13, 2010); Laskaris v. Thornburgh, 661 F.2d 23 (3d Cir. 1981)(Pennsylvania); Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274 (1977) (state agencies); Edelman v. Jordan, 415 U.S. 651 (1974) (state employees acting in their official capacity); Chittister v. Dep't of Comty. & Econ. Dev., 226 F.3d 223, 226-27 (3d Cir. 2000) (state employees acting in their official capacity). The only ways that a state may be sued in federal court are if (1) the state has waived its Eleventh Amendment immunity (Kentucky v. Graham, 473 U.S. 159 (1985)), or (2) Congress has made it unmistakably clear in either the language of a statute or in its legislative history that it is its intention to permit such suits (Bd. of Trustees of the Univ. of Alabama v. Garrett, 531 U.S. 356 (2001)). Neither is present in this case.

The motion to dismiss by the Commonwealth Defendants should be granted in this regard.

## F. Eighth Amendment Claims –ETS

Generally, in order to succeed on an Eighth Amendment claim based on prison conditions, a plaintiff must show: (i) "he has suffered an objectively, sufficiently serious injury," **and** (ii) "that prison officials inflicted the injury with deliberate indifference." Farmer v. Brennan, 511 U.S. 825, 834 (1994). The Eighth Amendment protects against prison conditions that threaten to cause health problems in the future, not just conditions that cause immediate medical problems. Helling v. McKinney, 509 U.S. 25, 33-34 (1993)(holding that prisoner stated cause of action under Eighth Amendment by alleging that prison officials had, with deliberate indifference, exposed him to levels of environmental tobacco smoke that posed an unreasonable risk of serious damage to his future health); Slaughter v. Rogers, 2010 WL 4016981, at *2 (3d

Cir. Oct.14, 2010) ("ETS exposure, as a threat to both present and future health, can state a cause of action under the Eighth Amendment, so long as the subjective and objective tests are met.").

A prisoner may maintain an action under the Eighth Amendment based on his exposure to ETS in two different ways.  The plaintiff may either allege that his exposure caused contemporaneous injury or he may proceed on a theory that the exposure poses a threat or risk to his future health.  Belland v. Matachiski, 2009 WL 1585811, at * 4 (M.D.Pa. 2009) (summarizing precedent of Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003) and Helling).

Here, liberally construing the Complaint and the Opposition Brief together, this Court infers that Plaintiff is pursuing both theories.

### 1)  Future Injury

As to a future injury claim, Plaintiff must sufficiently allege facts to meet both the objective and subjective components of the deliberate indifference test.

To meet the objective standard,

> [T]he Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [the challenged conditions].  It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.

Helling, 509 U.S. at 36 (emphasis in original).  See also Atkinson, 316 F.3d at 262 ("In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate."); Talal v. White, 403 F.3d 423, 426 (6th Cir. 2005) (in the context of ETS, a prisoner must show more than mere discomfort or inconvenience.).[6]

---

[6]  The second prong of the Farmer test is a subjective one, requiring Plaintiff to allege (at this point in the proceedings) that Defendants acted with deliberate indifference.  To establish deliberate indifference: 1) a prison official must know of and disregard an excessive risk to inmate health or safety; 2) the official must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and 3) the official must also draw the

In analyzing this first objective prong in the face of a motion to dismiss, this Court looks to Plaintiff's allegations regarding the degree of exposure. See Helling, 509 U.S. at 35. [7] Here, as the Commonwealth Defendants point out in their brief, Plaintiff's allegations of exposure to second hand smoke amount to fifty-five occasions over a period of seven months. ECF No. 20, page 9. Defendants further break that down to an average of 8 occasions per month, or once every four days. Defendants argue that exposure to ETS once every four days over a period of seven months is not "unreasonably high" so as to violate the first objective prong of the deliberate indifference analysis. This Court agrees. See Griffin v. DeRosa, 153 Fed.Appx 851, 853 (3d Cir. 2005) (holding that an inmate's allegations of ETS exposure over a period of twenty months from eight to ten inmates who smoked in the bathroom "every time" Plaintiff used it were insufficient); Atkinson, 316 F.3d 257 (finding exposure to unreasonably high level of ETS where inmate housed for seven months with a "constant smoker"); Murrell v. Chandler, 277 Fed.Appx 341, 343-44 (5th Cir. 2008) (reversing summary judgment where Plaintiff provided evidence that "he was exposed to excessive levels of ETS 12 to 24 hours per day in his housing unit and at the factory where he worked [and] the smoke was often so thick in his housing unit that he had to hold a wet towel over his face to breathe."); Richardson v. Spurlock, 260 F.3d 495, 498 (5th Cir. 2001) (holding that sporadic exposure to second hand smoke does not constitute unreasonably high levels of ETS, even if it causes discomfort such as coughing and nausea); Weeks v. Espinda, 2010 WL 2218631, at * 6 (D.Hawaii June 2, 2010) (holding that Plaintiff did not meet his burden of alleging his exposure to unreasonably high levels of ETS where he alleged prison staff smoked in a common area and the smoke drifted into

inference. Farmer, 511 U.S. at 837. Because Plaintiff's allegations fail to state a claim at the first objective standard, this Court need not examine whether Plaintiff has sufficiently alleged that Defendants acted with deliberate indifference.

[7] Helling's cellmate smoked five packs of cigarettes per day. Helling, 509 U.S. at 35.

his living quarters, or he was exposed to the smoke when he retrieved his mail from an enclosed mail room); Zaire v. Artuz, 2003 WL 230868, at *1 (S.D.N.Y. 2003) (holding that inmate's exposure to ETS in common areas but not in his cell over five month period did not constitute unconstitutional exposure to ETS). See also Carroll v. DeTella, 255 F.3d 470, 472 (7th Cir. 2001) (holding the Eighth Amendment does not require prisons to provide inmates with "more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans.").

Accordingly, the motion to dismiss should be granted as to the future injury portion of this Eighth Amendment claim.

### 2) Contemporaneous Injury

As to present injury, Plaintiff alleges that he became ill as a result of the exposure to ETS. ECF No. 6, ¶¶ 182-83, 200-01, 233, and 242.

A present injury claim related to ETS exposure "requires proof of (1) a sufficiently serious medical need related to ETS exposure; and (2) deliberate indifference by the prison authorities to that need." Panton v. Nash, 317 Fed.Appx 257, 258-59 (3d Cir. 2009) citing Atkinson, 316 F.3d at 266.

Neither set of Defendants argues for dismissal of the present injury claim, and so this claim remains pending.

### G. Eighth Amendment – Medical Claim

As to the Medical Defendants, Plaintiff alleges that he was denied medical treatment in July of 2008 (¶¶ 156, 179) and in November of 2009 (¶ 231); that medical treatment he received in August of 2008 made him sicker (¶ 183); that medical staff tried to cover-up the fact that he

had gotten sick from the exposure to ETS (¶¶ 39, 54, 182, 200-201); and that his requests for a massage therapist and/or chiropractor went unanswered (¶¶ 223-24).[8] These Defendants argue for dismissal of these claims.

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). The standard is two-pronged, "[i]t requires deliberate indifference on the part of prison officials and it requires that the prisoner's medical needs be serious." West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr'al. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (hereinafter, "Lanzaro"). A serious medical need may also arise "... when a delay in or denial of requested medical treatment causes an inmate to suffer a lifelong handicap or permanent loss." Peterson v. Achebe, 2007 WL 1381753, at * 3 (D.N.J. 2007) citing Lanzaro, 834 F.2d at 347.

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

---

[8] Plaintiff also alleges that some of the Medical Defendants smoked near him and/or that they did nothing to stop their coworkers from smoking near him.

However, mere misdiagnosis or negligent treatment is not actionable under §1983 as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). "Neglect, carelessness or malpractice is more properly the subject of a tort action in the state courts." Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1081 (3d Cir. 1976). See also White, 897 F.2d at 108 ("mere medical malpractice cannot give rise to a violation of the Eighth Amendment."). "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that so long as a physician exercises professional judgment, his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) citing Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982). See also Powell v. Symons, 2010 WL 1485682, at * 3 (M.D. Pa. March 22, 2010).

Furthermore, deliberate indifference is generally not found when some level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D.Pa. 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). There is necessarily a distinction between a case in which the prisoner claims a complete denial of medical treatment and one where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment. United States ex rel. Walker v. Fayette County, 599 F.2d 533, 575 n.2 (3d Cir. 1979). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir.1979) quoting Bowring v. Goodwin, 551 F.2d 44, 48 (4th Cir.1977).

Plaintiff's claim that his request for a massage therapist and/or a chiropractor went unanswered should be dismissed as Defendants are not constitutionally obligated to provide inmates with the treatment and/or doctors they request. However, at this initial stage of the litigation, all of Plaintiff's other allegations (regarding the denial of medical treatment, the medical treatment making him sicker, and the cover-up) are sufficient to survive the motion to dismiss.

### H. Eighth Amendment – Confinement In RHU

To the extent that Plaintiff alleges that his confinement in the RHU violated his Eighth Amendment rights[9], the claim should be dismissed for failure to state a claim upon which relief can be granted.

Although the Eighth Amendment protects prisoners from cruel and unusual Punishment, "not all deficiencies and inadequacies in prison conditions amount to a violation of an inmate's constitutional rights." Booth v. King, 228 Fed.Appx 167, 171 (3d Cir. 2007). Cruel and unusual punishment will only be found "where, viewing the totality of the conditions in the prison, the inmate's conditions of confinement, alone or in combination, deprive him of the minimal civilized measure of life's necessities." Id. quoting Tillery v. Owens, 907 F.2d 418, 426-27 (3d Cir.1990). Liability under 42 U.S.C. § 1983 requires "more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986). Only "unnecessary and wanton infliction of pain" or "deliberate indifference to the serious medical

---

[9] Because Plaintiff is a *pro se* litigant, this Court will conduct an analysis under both the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment, even though the Due Process Clause is more appropriate to the facts alleged by Plaintiff. Cf. Ordonez v. Yost, 289 Fed.Appx 553, 555 (3d Cir. 2008) citing Graham v. Connor, 490 U.S. 386, 395 (1989) (Where a due process claim is identical to an Eighth Amendment claim, the plaintiff must "bring the claim pursuant to the more explicit constitutional amendment.").

needs" of prisoners is sufficiently egregious to rise to the level of a constitutional violation. White v. Napoleon, 897 F.2d at 108-09, quoting Estelle, 429 U.S. 97.

In the non-medical context, the Eighth Amendment imposes a duty upon prison officials to provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-527 (1984). To make out an Eighth Amendment claim based on prison conditions, the plaintiff must show "he has suffered an objectively, sufficiently serious injury, and that prison officials inflicted the injury with deliberate indifference." Farmer, 511 U.S. at 834. An objectively, sufficiently serious injury is one that denies the inmate "the minimal civilized measure of life's necessities," such as food, water, shelter. Rhodes v. Chapman, 452 U.S. 337, 347 (1981); see also Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 419 (3d Cir. 2000).

As to the first requirement, "prison conditions violate the Eighth Amendment if they result in the 'unnecessary and wanton infliction of pain,' are 'grossly disproportionate to the severity of the crime warranting imprisonment,' or result in an 'unquestioned and serious deprivation of basic human needs.'" Robinson v. Carr, 99 F.3d 1150 (Table)(10th Cir.1991) quoting Rhodes, 452 U.S. at 346-47. As to the second requirement, deliberate indifference is a difficult standard to meet: 1) a prison official must know of and disregard an excessive risk to inmate health or safety; 2) the official must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and 3) the official must also draw the inference. Farmer, 511 U.S. at 837.

Here, Plaintiff alleges that his time spent in the Restricted Housing Unit violates his Eighth Amendment rights. Plaintiff's allegations are not sufficient to state an Eighth

Amendment violation as the conditions alleged fall short of demonstrating cruel and unusual punishment because there is no demonstration that they "inflict unnecessary or wanton pain" or are "grossly disproportionate to the severity of crimes warranting imprisonment," under the objective standard.  Rhodes, 452 U.S. at 348-50.  Thus, the facts alleged here do not constitute cruel and unusual punishment because they do not adequately allege that basic human needs were left unsatisfied.  Tillman, 221 F.3d at 419 (prisoner was not subject to cruel and unusual punishment because he was never denied room, food, or other necessities).

### I.   Due Process – Confinement in RHU

Plaintiff also alleges that his RHU confinement violates his due process rights.

"Due process" is guaranteed through the Fourteenth Amendment of the United States Constitution which provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. Amend. XIV.  The Due Process Clause was promulgated to secure the individual from the arbitrary exercise of the powers of government. The "procedural" aspect of the Due Process Clause requires the government to follow appropriate procedures to promote fairness in governmental decisions; while the "substantive" aspect of the Clause bars certain government actions regardless of the fairness of the procedures used to implement them so as to prevent governmental power from being used for purposes of oppression.  Daniels v. Williams, 474 U.S. 327, 329-33 (1986).

In analyzing a due process claim in the context of the claim presented here, the first step is to determine whether the nature of the interest is one within the contemplation of the liberty language of the Fourteenth Amendment. See Fuentes v. Shevin, 407 U.S. 67 (1972).  A protected

liberty interest may arise from the Constitution itself or from state-created statutory entitlement. Hewitt v. Helms, 459 U.S. 460, 466 (1983); Bd. of Regents v. Roth, 408 U.S. 564 (1972).

In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court announced a new rule for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by the due process guarantees. The Court concluded that such a liberty interest arises whenever the deprivation suffered by the prisoner imposes an "*atypical and significant hardship* on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (italics added). Applying this test, the Supreme Court concluded that the prisoner at issue in Sandin did not have a protected liberty interest in remaining free of disciplinary detention or segregation "because his thirty-day detention, although punitive, 'did not exceed similar, but totally discretionary confinement in either duration or degree of restriction.'" Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2000) quoting Sandin, 515 U.S. at 486. See also Wilkinson v. Austin, 545 U.S. 209, 223 (2005) ("After *Sandin*, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is [ ...] the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'").

Plaintiff's allegations regarding time spent in the RHU do not rise to the level of a due process violation. See Mackey v. Smith, 249 Fed.Appx 953 (3d Cir. 2007) (holding no liberty interest arises for prisoner placed in restricted housing).

Plaintiff has failed to state a due process claim under the Fourteenth Amendment, and accordingly, the motion to dismiss should be granted as to this claim.

**J. Due Process – personal property**

Plaintiff alleges that his due process rights have been violated due to the loss of items of personal property.

The analysis of a due process claim stemming from the deprivation of a property interest focuses on the existence of a  post-deprivation remedy.  An unauthorized, intentional deprivation of property by government employees does not violate the Due Process Clause so long as there is a "meaningful post-deprivation remedy" available to the plaintiff.  Hudson v. Palmer, 468 U.S. 517, 533 (1984).  See also Tillman , 221 F.3d at 421 ("[W]here it is impractical to provide meaningful pre-deprivation process, due process will be satisfied by a meaningful post-deprivation remedy.").  In Hudson, the Supreme Court reasoned that an intentional deprivation cannot be controlled in advance so as to adequately provide any pre-deprivation process.  Id.  See also Parratt v. Taylor, 451 U.S. 527 (1981)(held that a negligent deprivation of property by state officials does not violate the Fourteenth Amendment if an adequate post-deprivation state remedy exists), overruled on other grounds, Daniels, 474 U.S. 327. Thus, Plaintiff has no viable claim under the Constitution if an adequate post-deprivation remedy was available to him.

The prison grievance system has been deemed an adequate post-deprivation remedy. Tillman, 221 F.3d at 421.  This Court takes judicial notice of the fact that the Department of Corrections  has a grievance system in place. Because Plaintiff had adequate post-deprivation remedies available to him to contest the loss of his personal property, his due process claims fail. Accordingly, the motion to dismiss should be granted as to this claim.


**K.  Access To Courts**

Plaintiff alleges that Defendants have denied him access to courts.  ECF No. 6, ¶¶ 84-88, 213-22; and 240.

Prisoners have a constitutional right to "adequate, effective and meaningful" access to the courts. <u>Bounds v. Smith</u>, 430 U.S. 817 (1977).[10]  It is a well settled principle of law that in order to state a claim for a denial of the right of access to the courts, a plaintiff must also show actual injury. <u>Lewis v. Casey</u>, 518 U.S. 343 (1996).  Prisoners are limited to proceeding on access to courts claims challenging either their sentence (by direct or collateral attack) and their conditions of confinement, as the "impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." <u>Id.</u>  at 355.  A plaintiff must allege both an underlying cause of action, whether anticipated or lost, and official acts frustrating the litigation. <u>Christopher v. Harbury</u>, 536 U.S. 403 (2002).  Mere conclusory allegations that an inmate suffered prejudice are insufficient to sustain an access to courts claim. <u>Acre v. Walker</u>, 58 F.Supp.2d 39 (W.D. N.Y 1999).

As the Third Circuit has explained:

> Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury' – that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit.  To that end, prisoners must satisfy certain pleading requirements: **The complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'**

<u>Monroe v. Beard</u>, 536 F.3d 198, 205-06 (3d Cir. 2008) <u>quoting</u> <u>Christopher</u>, 536 U.S. at 415 (emphasis added).

In other words,  Plaintiff is required to allege that he has lost the opportunity to pursue a nonfrivolous or arguable underlying claim and that there is no other remedy available to him.

---

[10] The right of access to courts may arise in the context of the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection Clause.  <u>See</u> <u>Christopher v. Harbury</u>, 536 U.S. 403, 415 n.12 (2002).

Here, Plaintiff's claims should be dismissed as his allegations have not met the standards of Monroe and Lewis v. Casey. Plaintiff has not described the actual "claims" or "remedies" with sufficient specificity. Generalities about insufficient time in the law library are not enough, and the motion to dismiss should be granted as to this claim. Further, as this is the only claim levied against Defendants Vogus, Zarnick, Martin, Heckler, Clayton, Lantz, Bickel and Rozcinski, they should be dismissed from this action.

### L.  Harassment

To the extent that Plaintiff claims that verbal threats and harassment violated his constitutional rights, these claims should be dismissed for failure to state a claim upon which relief may be granted. McKay v. U.S. Dep't of Justice, 2010 WL 4358404, at * 1 n.1 (3d Cir. Nov.4, 2010) ("verbal harassment does not rise to the level of a constitutional violation.").

### M.  Equal Protection

Plaintiff generally alleges that his right to equal protection has been violated. Defendants argue that Plaintiff has failed to state an equal protection claim upon which relief can be granted.

The Equal Protection Clause provides that no state shall "deny to any person ... the equal protection of its laws." U.S. Const. Amend. XIV, §1. All persons "similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985); Artway v. New Jersey, 81 F.3d 135, 1267 (3d Cir. 1996). "Treatment of dissimilarly situated persons in a dissimilar manner by the government does not violate the Equal Protection Clause." Klinger v. Dep't of Corr., 31 F.3d 727, 731 (8th Cir. 1994).

As a threshold matter, in order to establish an equal protection violation, the plaintiff must "...demonstrate that [he has] been treated differently by a state actor than others who are similarly situated simply because [he] belongs to a particular protected class." Keevan v. Smith, 100 F.3d 644, 648 (8th Cir. 1996).

Even liberally construing the allegations of the *pro se* complaint, as we must under Haines v. Kerner (404 U.S. 519) and its progeny, Plaintiff has not identified any facts which rise to the level of a constitutional violation of his equal protection rights. Specifically, Plaintiff has not identified himself as being part of any protected class and has not identified how he has been treated dissimilarly from others who are similarly situated. Because Plaintiff has failed to state a claim upon which relief may be granted in this regard, the equal protection claim should be dismissed.

### N.  Retaliation

Next, Plaintiff alleges that he has been the victim of retaliatory conduct by Defendants in a number of ways.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." See White, 897 F.2d at 111-12. "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).

In order to state a *prima facie* case of retaliation, a prisoner plaintiff must demonstrate:

> 1) the conduct in which he was engaged was constitutionally protected;

2) he suffered "adverse action" at the hands of prison officials; and

3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002) quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).[11]

The Commonwealth Defendants argue that Plaintiff has failed to state a retaliation claim because he has not engaged in any protected activity.[12] Liberally construing Plaintiff's allegations, his filing of numerous grievances regarding his exposure to ETS serves as the protected activity in order to satisfy the first prong of the *prima facie* case. See Robinson v. Taylor, 204 Fed.Appx 155, at *157 (3d Cir. 2006) citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) and Davis v. Goord, 320 F.3d 346, 352-53 (2d Cir. 2003).

The Medical Defendants also move for dismissal of the retaliation claim. The totality of their argument is made in these few sentences:

> [W]ith regard to the Medical Defendants, his references to retaliation are averments that the retaliation was because of his litigious behavior. He fails to specify any acts by the Medical Defendants or how they were predicated upon retaliation, other than to say general conclusions. […] Here, at a minimum, Williams has failed to satisfy the second and third elements of a retaliation claim. Williams does not allege that he suffered any adverse consequence from his

---

[11] Following the satisfaction of a *prima facie* case of retaliation, the burden then shifts to the defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if plaintiff were not engaging in the constitutionally protected activities. Carter, 292 F.3d at 158. "Once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334.

[12] The Commonwealth Defendants do not make any other argument as a basis to support their motion to dismiss the retaliation claims.

> alleged interactions with the Medical Defendants and there are no allegations of any interactions with PHS.

ECF No. 19, page 8.

This Court disagrees that there are no allegations that support the second or third prongs of a *prima facie* retaliation case. By way of example, Plaintiff has alleged that he was denied medical care by Medical Defendant Mowry in retaliation for his complaints about ETS exposure. See ECF No. 6, ¶ 244. This alleged denial of medical care rises to the level of adverse action. In the lengthy complaint, there are other examples that also refute the Medical Defendants' claim that no retaliation allegations exist. It is not the duty of this Court to list them all here or to review Plaintiff's complaint regarding the final prong of the retaliation test which is not the subject of the Medical Defendants' motion. These Defendants have not met their burden to have the retaliation claims dismissed.

Accordingly, both motions to dismiss should be denied as to the retaliation claims.


**O. Civil Conspiracy**

Both groups of Defendants move to dismiss the conspiracy claims against them.

In order to state a cause of action for violation of a constitutional right under § 1983, a plaintiff must sufficiently allege the deprivation of a federally protected right by a person acting under color of state law. 42 U.S.C. § 1983. "[I]n order to survive 12(b)(6) [on] a claim for a § 1983 civil conspiracy [...], a plaintiff is required to provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." Cunningham v. North Versailles Twp., 2010 WL 391380, at * 5 (W.D. Pa. Jan. 27, 2010) quoting Thomas v. Independence Twp., 463 F.3d 285, 292 (3d Cir. 2006) and Capogrosso v. Supreme Court of New Jersey, 588 F.3d 180, 185 (3d Cir. 2009). See also In re Advanta Corp. Sec. Litig., 180 F.3d 525,

534 (3d Cir. 1999) (Fed. R. Civ. P. 9(b) "requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story."). [3]

Here, Plaintiff alleges that Defendants acted together to conceal his smoke-related illness. At this earlier stage of the litigation, this allegation is sufficient to survive the motions to dismiss.

## P. Respondeat Superior

The Commonwealth Defendants claim that Plaintiff has not sufficiently alleged the personal involvement of Adams, Sobina, Varner and Watson and that they should be dismissed from this action.

When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage

---

[3] 42 U.S.C. § 1985(3) creates a private cause of action for damages incurred "[i]f two or more persons ... conspire ... for the purpose of depriving ... any person of the equal protection of the laws." 42 U.S.C. § 1985(3). In order to establish a claim for conspiracy under § 1985(3), a plaintiff must show the following elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.

Id. See also United Bhd. of Carpenters & Joiners of Am. v. Scott, 463 U.S. 825, 828-29 (1983). The statute does not create any substantive rights, but instead "permits individuals to enforce substantive rights against conspiring private parties." Farber v. City of Patterson, 440 F.3d 131, 134 (3d Cir. 2006). Moreover, § 1985(3) "was not intended to provide a federal remedy for 'all tortious, conspiratorial interferences with the rights of others,' or to be a 'general federal tort law.'" Id. at 134, quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). Thus, because § 1985(3) requires "the intent to deprive of equal protection, or equal privileges and immunities," a claimant must allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action" in order to state a claim. Id.

constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Id. quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990). The supervisor must be personally involved in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1958, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) quoting Rode, 845 F.2d at 1207). Section 1983 liability cannot be predicated solely on *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976); see also Monell v. Dep't of Social Serv., 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action).[13]

The Commonwealth Defendants argue that the allegations against Adams, Sobina, Varner, and Watson only involve their participation in the grievance review process and therefore are not sufficient to state a claim.

In his Amended Complaint, Plaintiff identifies: Melinda Adams as the Superintendent's Assistant (¶ 13); Raymond Sobina as the Warden (¶ 10); Dorina Varner as a Chief Hearing Examiner (¶ 66); and Cindy Watson as a Chief Hearing Examiner (¶ 13). A review of the claims against these four Defendants reveals that all the claims against them revolve around their failure to remedy an allegedly unconstitutional situation after Plaintiff complained to them about

---

[13] However, supervisory liability may attach where a supervisory official knowingly permits a continuing custom or policy that results in harm to a Plaintiff. Chisler v. Johnston, 2010 WL 1257458, at * 10 (W.D. Pa. March 29, 2010). Liability under § 1983 attaches "only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate." Colburne v. Upper Darby Twp., 838 F.2d 663, 673 (3d Cir. 1988), overruled in part on other grounds by Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993). Here, this Court does not read Plaintiff's complaint to allege that supervisory officials engaged in a continuing custom or policy.

it.  See ECF No. 6, ¶ 235 (failure to intervene to stop ETS exposure against Adams, Sobina, and Watson); ¶ 237 (refusing to remedy the destruction of personal property against Adams, Sobina, and Watson); ¶ 241 (failure to remedy access to courts against Adams, Varner, and Watson); ¶ 243 (failure to act when notified of Defendant Mowry's alleged cover-up against Adams, Sobina, and Varner); ¶ 245 (failure to act when notified of the denial of medical care by Defendant Mowry against Adams, Sobina and Watson ); ¶ 247 (failure to remedy the alleged denial of medical care by Defendant Telega against Sobina, Watson, and Varner); ¶ 249 (the inaction of Sobina, Watson and Varner after they were notified that Defendant Telega prescribed medication for Plaintiff that made him sick); ¶ 251 (inaction by Watson and Varner after they were notified that Lt. Everding smoked a cigar); and ¶ 253 (inaction by Adams, Sobina, Varner and Watson after they were notified that a nurse smoked in front of the SCI-Albion Medical Department).[14]

The review and denial of grievances and subsequent appeals does not establish personal involvement sufficient to impose § 1983 liability by these supervisory officials.  See Jefferson v. Wolfe, 2006 WL 1947721, at * 17 (W.D.Pa. 2006); Ramos v. Pennsylvania Dep't of Corr., 2006 WL 2129148, at *2 (M.D. Pa. 2006).

Accordingly, the Commonwealth's motion to dismiss should be granted and Defendants Adams, Sobina, Varner and Watson should be dismissed from this action.


**Q.  Certificate of Merit as to the Medical Negligence Claims**

Finally, the Medical Defendants move for dismissal of the state law negligence

---

[14]   The allegations against Defendant Adams are ¶¶ 13, 73, 86-87, 89, 103, 162, 17475, 182, 186-87, 197, 200-01, 205, 215, 222, 224, 226-27, 232-33; against Defendant Sobina are ¶¶ 10, 81, 88, 92, 123, 125, 174, 184-86, 197, 199, 202-03, 206-07, 218, 220, 222, and 227; against Defendant Varner are ¶¶ 66, 175, 199, 203, 207, 220, 222, and 228; and against Defendant Watson are ¶¶ 24, 88, 222, and 228.

claims against them as Plaintiff has failed to comply with the requirements of Pennsylvania Rule of Civil Procedure 1042.3, which provides:

> In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, **shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party** ...

Pa.R.C.P. 1042.3(a)(emphasis added). The certificate of merit must state either: (1) that an appropriate licensed professional has opined in writing that there is a reasonable probability that the defendant's care did not measure up to professional standards and caused the plaintiff's injury; (2) that the claim against the defendant is based on respondeat superior (in which case, the plaintiff must obtain an opinion from an appropriate licensed professional that there is a reasonable probability that the care provided by the defendant's agents did not measure up to professional standards and caused the plaintiff's injury); or (3) that expert testimony is unnecessary[15] to the plaintiff's claim. Id.

Federal courts have supposed that "[t]he purpose of the required certificate of merit is to 'assure that malpractice claims for which there is no expert support will be terminated at an early stage in the proceedings.'" Robinson v. U.S., 2010 WL 1254277, at *16 (M.D.Pa. 2010) quoting Chamberlain v. Giampapa, 210 F.3d 154, 160 (3d Cir. 2000). Rule 1042.3 applies to incarcerated pro se plaintiffs (see Perez v. Griffin, 2008 WL 2383072 (M.D.Pa.), aff'd, 2008 WL 5351829 (3d Cir.)) and applies regardless of whether state law claims are brought under supplemental jurisdiction or under diversity jurisdiction (see Rodriguez v. Smith, 2005 WL 1484591 at * 7 n. 13 (E.D.Pa. June 21, 2005)).

---

[15]  The note to Rule 1042.3 explains that when a certificate of merit states that an expert is unnecessary, "in the absence of exceptional circumstances, the attorney [or presumably, the pro se plaintiff] is bound by the certification and, subsequently, the trial court shall preclude the plaintiff from presenting testimony by an expert on the questions of standard of care and causation." Id.

Here, Plaintiff has filed no certificate of merit as to the medical negligence claims against the Medical Defendants.[16]  In fact, Plaintiff did not file the required certificate even after the filing of the Medical Defendants' instant motion to dismiss, which gave him notice that one was needed.  Thus, the Medical Defendants are entitled to have the state law negligence claims against them dismissed, without prejudice, and their motion to dismiss should be granted in this regard.

## III.    CONCLUSION

For the foregoing reasons, it is respectfully that the Motion to Dismiss filed by the Commonwealth Defendants [ECF No. 17] be granted in part and denied in part and the Motion to Dismiss filed by Defendants Bashline, Gilreath, Mowry and Telega [ECF No. 18] be granted in part and denied in part.

More specifically, the Commonwealth's motion to dismiss [ECF No. 17] should be:

- Denied on the basis of res judicata;

- Granted as to the state law claims on the basis of sovereign immunity;

- Denied as to the Eighth Amendment ETS Claims involving contemporaneous injury and granted as to the Eighth Amendment ETS claims involving future injury;

- Granted as to the claim about the denial of a massage therapist and/or chiropractor, but denied as to the remaining Eighth Amendment medical claims;

---

[16]  Plaintiff filed a certificate of merit against Commonwealth Defendant Maxine Overton, the SCI-Albion Health Care Administrator, indicating that expert testimony is not required in this matter.  ECF No. 6, page 62.  Plaintiff argues that because this case involves "simple deductive reasoning and the process of elimination,"  no expert testimony is necessary.   Opposition Brief, ECF No. 47, page 8.  Further, Plaintiff claims that his own testimony at trial, as well as his depositions of Defendants, will prove his case.  Id.  Plaintiff is wrong in this regard.  See Levi v. Lappin, 2009 WL 1770146, at *7 (M.D.Pa.).

- Granted as to both the Eighth Amendment claims and the due process claims based upon Plaintiff's confinement in RHU;

- Granted as to the due process claims based upon the confiscation or loss of Plaintiff's personal property;

- Granted as to the access to courts claims – which means that Defendants Vogus, Zarnick, Martin, Heckler, Clayton, Lantz, Bickel and Rozcinski should be terminated from the docket;

- Granted as to the harassment claims;

- Granted as to the Equal Protection claims;

- Denied as to the retaliation claims;

- Denied as to the civil conspiracy claims; and

- Granted as to Defendants Adams, Sobina, Varner and Watson on the basis of respondeat superior.

The Medical Defendants' motion to dismiss [ECF No. 18] should be:

- Denied on the basis of res judicata;

- Denied on the basis of the Rooker-Feldman doctrine;

- Denied as to the Eighth Amendment medical claims;

- Denied as to the civil conspiracy claims;

- Denied as to the retaliation claims; and

- Granted as to the dismissal of the state law negligence claims on the basis of Plaintiff's failure to file a certificate of merit.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72 of the Federal Rules of Civil Procedure, the parties are allowed fourteen (14) days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of the objections

to respond thereto.  <u>See</u> Fed.R.Civ.P. 72(b)(2).  Failure to file timely objections may constitute a waiver of any appellate rights.  <u>See</u> <u>Nara v. Frank</u>, 488 F.3d 187 (3d Cir. 2007).


/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated:  November ___ , 2010