**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLES WILLIAMS,** | ) | |
| **Plaintiff,** | ) | **Civil Action No. 10-19 Erie** |
| | ) | |
| **v.** | ) | |
| | ) | **District Judge Sean J. McLaughlin** |
| **STATE CORRECTIONS OFFICERS** | ) | |
| **ASSOCIATION, et al.,** | ) | **Magistrate Judge Susan Paradise Baxter** |
| **Defendants.** | ) | |


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**


**I.      RECOMMENDATION**

It is respectfully recommended that the motion for summary judgment filed by the

Medical Defendants [ECF No. 159] be granted, and the motion for summary judgment filed by

the Commonwealth Defendants [ECF No. 164] be granted.

Furthermore, Defendants Longstreet and the State Corrections Officers Association

should be dismissed from this case pursuant to Rule 4(m) of the Federal Rules of Civil

Procedure.  The Clerk of Courts should be directed to close this case.


**II.    REPORT**

**A.      Relevant Procedural History**

Plaintiff, a state prisoner, acting pro se, filed this civil rights action under 42 U.S.C. §

1983.  Plaintiff alleges that:

> " Defendants with deliberate indifference involuntarily exposed the Plaintiff to
> levels of ETS [or environmental tobacco smoke] that posed an unreasonable risk

of serious damage to his current/future health in violation of the Eighth Amendment of the U.S. Constitution, conspired to cover up the fact that the plaintiff had gotten sick as a result of the Defendants exposing him to the poisonous toxins from their tobacco smoke on the non-smoking housing unit that he was housed on, discriminated against the Plaintiff on the base [sic] of his race in violation of the Fourteenth Amendment of the U.S. Constitution, and retaliated against the Plaintiff for exercising his First Amendment right of the U.S. Constitution in violation of the First and Fourteenth Amendment of the U.S. Constitution. The Plaintiff also alleges the torts of negligence, gross negligence, recklessly endangering another person, attempted murder, torture, ethnic intimidation, nuisance, official oppression, harassment, malicious mischief, civil conspiracy, criminal conspiracy, disorderly conduct, abuse of authority, breach of contract, breach of duty, mental anguish, emotional distress, humiliation, engagement in organized criminal activity, theft, receiving stolen property, falsifying reports, and etc."

ECF No. 6, page 3. The complaint is sixty-three pages in length and contains over 250 paragraphs. As relief, Plaintiff seeks monetary and injunctive[1] relief.

Named as Defendants to this action are: The State Corrections Officers Association; Jeffrey Beard; Marilyn Brooks; Raymond Sobina; Nancy Giroux; Richard Hall; Melinda Adams; Maxine Overton; Rebecca Kessler; Roderic A. Showers; Michael Brumagin; Correctional Officer Gilmore; Correctional Officer Dhappart; Sgt. Christopher; Correctional Officer Joseph Saraceno; Sgt. Little; Correctional Officer Hong; Cindy G. Watson; Correctional Officer Harmon; Correctional Officer Rieger; Sgt. Carr; Officer Hickman; Ronald Bryant; Sherman Morrison; Major Gilmore; Sgt. Stull; Lt. McConnell; Correctional Officer Abreu; Sgt. Bowen; Correctional Officer Skindale; Sgt. Edmunds; Correctional Officer Hunt; Physician's Assistant Tammy Mowry; Dr. David Bashline; Captain White; Steven Reilly; Ms. Larson; Correctional

---

[1] As to the injunctive portion of the requested relief, Plaintiff seeks: 1) an injunction ordering Department of Corrections employees to stop smoking tobacco products inside the Commonwealth of Pennsylvania Department of Corrections non-smoking housing units; 2) an injunction prohibiting Department of Corrections employees from smoking tobacco products within 100 feet of every public building of the Commonwealth of Pennsylvania Department of Corrections; and 3) an injunction directing Department of Corrections employees to allow pro se litigants a period of fifteen consecutive days to conduct their legal research when those individuals have deadlines for criminal and civil actions. ECF No. 6, page 60.

Officer Harvey; Mr. Barco; Mr. Waid; Ms. Jackson; Ms. Daniels; Sgt. Melec; Lt. Gilbert; Albert

Williams; Alfred Sparks[2]; Mr. Patz; Physician's Assistant Daniel Telega; Harold Heckler; Gene

Zarnick; Sgt. Martin; Jason Vogus; Kevin Lantz; Michael Clark; Sgt. Clayton; Dorina Varner;

Christine Zirkle; Nurse Doe; Correctional Officer Rodrigues; Correctional Officer B.S.

Sommers; Dr. Longstreeet; Dr. Valerie Gilreath; Tracy Pollock; Ms. Bickel; and Ms. Roscinski.

Defendants Bashline, Gilreath, Mowry and Telega are represented by private counsel, while the

remaining served Defendants are represented by the Office of the Attorney General.

In response to the complaint, both sets of Defendants filed motions to dismiss pursuant to

Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 17, 18. By Report and Recommendation

filed November 18, 2010, the undersigned analyzed the pending motions and recommended that

the motions to dismiss be granted in part and denied in part.[3] Specifically as to the *res judicata*

---

[2] Defendants Williams and Sparks are identified as fellow inmates.

[3] The Report and Recommendation indicated that the motion to dismiss filed by the Commonwealth Defendants [ECF No. 17] and the Motion to Dismiss filed by Defendants Bashline, Gilreath, Mowry and Telega [ECF No. 18] be granted in part and denied in part. More specifically, it recommended that the Commonwealth's motion to dismiss [ECF No. 17] be: denied on the basis of res judicata; **g**ranted as to the state law claims on the basis of sovereign immunity; denied as to the Eighth Amendment ETS Claims involving contemporaneous injury and granted as to the Eighth Amendment ETS claims involving future injury; granted as to the claim about the denial of a massage therapist and/or chiropractor, but denied as to the remaining Eighth Amendment medical claims; granted as to both the Eighth Amendment claims and the due process claims based upon Plaintiff's confinement in RHU; granted as to the due process claims based upon the confiscation or loss of Plaintiff's personal property; granted as to the access to courts claims – which means that Defendants Vogus, Zarnick, Martin, Heckler, Clayton, Lantz, Bickel and Rozcinski should be terminated from the docket; granted as to the harassment claims; granted as to the Equal Protection claims; denied as to the retaliation claims; denied as to the civil conspiracy claims; and granted as to Defendants Adams, Sobina, Varner and Watson on the basis of respondeat superior.

It was also recommended that the Medical Defendants' motion to dismiss [ECF No. 18] be: denied on the basis of res judicata; denied on the basis of the Rooker-Feldman doctrine; denied as to the Eighth Amendment medical claims; denied as to the civil conspiracy claims; denied as to the retaliation claims; and granted as to the dismissal of the state law negligence claims on the basis of Plaintiff's failure to file a certificate of merit.

and Rooker-Feldman arguments, I concluded that the pending motions to dismiss should be denied based upon the limited record before the Court. ECF No. 49.

Thereafter, both Plaintiff and Defendants filed Objections to the Report and Recommendation. ECF Nos. 56, 57, 58. With their Objections, Defendants filed court documents from the Erie County Court of Common Pleas in support of their *res judicata* and Rooker Feldman arguments. Due to the introduction of these additional materials, District Judge Sean McLaughlin remanded the matter "for consideration of this evidence in the first instance." ECF No. 60. Following the remand, Plaintiff was allowed to file his Response to the Defendants' Objections. ECF Nos. 63, 64.

Thereafter, I authored a Supplemental Report and Recommendation limited to the analysis of the new evidence applied to the res judicata and Rooker-Feldman defenses, as directed by the District Judge's Order. ECF No. 92. District Judge McLaughlin adopted both Reports and Recommendations with one exception. Judge McLaughlin ruled that "given the nature of Plaintiff's allegations relative to his Eighth Amendment ETS claim alleging future injury, the Court is of the opinion that this issue should be addressed on a more fully developed record in conjunction with a motion filed pursuant to Rule 56 of the Federal Rules of Civil Procedure." ECF No. 96.[4]

Presently pending before this Court are: 1) the motion for summary judgment filed by Bashline, Gilreath, Mowry and Telega [ECF No. 159]; and, 2) the motion for summary judgment filed by the Commonwealth Defendants [ECF No. 164]. Plaintiff has filed

---

[4] Defendants Vogus, Zarnick, Martin, Heckler, Clayton, Lantz, Bickel, and Rozinski should have been terminated from the docket at that time. See ECF No. 49, page 33. Due to an error, they were not terminated although all the claims against them were dismissed.

Oppositions, as well as numerous supporting exhibits, in response to the pending dispositive motions.  See ECF Nos.  168, 172, 175, 181-184, 186-212.

The present motions are fully briefed and are ripe for disposition by this Court.

### B.     Standards of Review

#### 1)  Pro Se Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520-521(1972).  If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements.   Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991).  Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant.  Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997).  See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990)(same).  Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

#### 2)  Motion for summary judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving

party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

### C.  The Doctrine of Res Judicata

#### 1)  Procedural History

Both sets of Defendants move for summary judgment on the basis of the doctrine of res judicata, which has been raised in prior motions.  In the Report and Recommendation addressing the motions to dismiss, I recommended that the motions be denied as to this argument based upon the limited record before the Court.  Specifically, I concluded that a decision on the issue of res judicata was premature, specifically noting the lack of a transcript from a March 1, 2010, hearing before the Erie County Court of Common Pleas.  ECF No. 49, page 10.  In their Objections to the Report and Recommendation, Defendants provided the transcript which I noted was missing.  The matter was remanded to me for further consideration of the "new evidence" submitted by Defendants.

In the Supplemental Report and Recommendation, I concluded that an examination of the "new evidence" was inappropriate because under Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Lt. (181 F.3d 410 (3d Cir. 1999)), such an examination effectively converts a motion to dismiss into a motion for summary judgment, without giving the pro se litigant the benefit of notice, discovery and further briefing.  See Renchenski v. Williams, 622 F.3d 315 (3d Cir. 2010).[5] [6]

_____

[5]  See ECF No. 92, Supplemental Report and Recommendation, page 12 ("The Third Circuit's recent opinion in Renchenski v. Williams, (622 F.3d 315, 340 (3d Cir. 2010)), precludes the conversion of the motions to dismiss into motions for summary judgment at this stage of the proceedings.  The Renchenski Court issued a directive requiring district courts to provide pro se litigants with adequate notice of the conversion of a motion to dismiss into a motion for summary judgment, because such a conversion "can present potentially severe procedural snares

7

### 2) Applicable Law

A federal court applying preclusion principles is bound by the Full Faith and Credit statute, 28 U.S.C. § 1738, and must give a prior state court judgment the same effect as would the adjudicating states.  <u>Haring v. Prosise</u>, 462 U.S. 306, 313 (1983) <u>citing</u> <u>Allen v. McCurry</u>, 449 U.S. 90, 96 (1980).  <u>See</u> <u>also</u> <u>Salley v. Rendell</u>, 2008 WL 1752246, at * 5 n.9 (W.D. Pa. 2008) (highlighting difference between federal common law doctrine of claim preclusion and claim preclusion doctrine under state law).

The doctrine of claim preclusion (traditionally known as res judicata) precludes "a party from initiating a second suit against the same adversary based on the same 'cause of action' as the first suit."  <u>Duhaney v. Attorney Gen. of the United States</u>, 621 F.3d 340, 346 (3d Cir. 2010) <u>citing</u> <u>In re Mullarkey</u>, 536 F.3d 215, 255 (3d Cir. 2008).[7]  Additionally, under res judicata, a judgment is given "preclusive effect" by "foreclosing litigation of matters that should have been

---

for pro se litigants."  <u>Walker v. Elliot</u>, 2010 WL 4916715, at *5 (M.D. Pa. Oct. 25, 2010).   The Circuit specifically instructed district courts on the type of notice that must be provided to the pro se litigant, explaining that "adequate notice in the pro se prisoner context includes providing a prisoner-plaintiff with a paper copy of the conversion order, as well as a copy of Rule 56 and a short summary explaining its import that highlights the utility of a Rule 56(f) affidavit." <u>Renchenski</u>, 622 F.3d at 340.  Here, due to the unusual procedural posture of this case, Plaintiff has not received the appropriate notice under <u>Renchenski</u> necessary for this Court to conduct a full and fair consideration of the evidence introduced by way of Defendants' Objections.").

[6]  In opposition to the presently pending motions for summary judgment, Plaintiff argues that the issue of res judicata was previously decided by this Court and cannot be revisited.  Plaintiff is mistaken in this argument.  As the procedural history related above illustrates, this Court did not make a final decision on the issue of res judicata.

[7]  "Res judicata is not a jurisdictional bar, but rather is an affirmative defense that prohibits litigation between the same parties on a cause of action that was previously adjudicated on its merits."  <u>Briar Meadows Dev., Inc. v. South Centre Twp.  Bd. of Supervisors</u>, 2010 WL 4024775, at * 6 (M.D. Pa. 2010).  <u>See</u> <u>also</u> <u>Great Western Mining & Mineral Co. v. Fox Rothschild LLP</u>, 615 F.3d 159, 170 (3d Cir. 2010) ("Importantly, preclusion is not jurisdictional.").

raised in an earlier suit." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 77 n.1 (1984). As a result, a judgment "foreclose[es] litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." Id.

As the Third Circuit has explained:

> The purpose of precluding 'parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation defending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.' Montana v. United States, 440 U.S. 147, 153-54 (1979). With regard to issues first presented to a state tribunal, the federal courts have consistently accorded preclusive effect to issues decided by state courts, and, thus 'res judicata and collateral estoppel not only reduce unnecessary litigation and foster reliance on adjudication, but also promotes the comity between state and federal courts that has been recognized as a bulwark of the federal system.' Allen v. McCurry, 449 U.S. 90, 95-96 (1980); see also 28 U.S.C. § 1738.

M&M Stone Co. v. Commonwealth of Pennsylvania, 388 Fed.Appx 156, at *3 (3d Cir. 2010).

"Any final, valid judgment on the merits by a court of competent jurisdiction precludes any further suit between the parties or their privies on the same cause of action." Turner v. Crawford Square Apts. III, L.P., 449 F.3d 542, 548 (3d Cir 2006) quoting Balent v. City of Wilkes-Barre, 669 A.2d 309, 313 (1995). In other words, federal courts must "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." Allegheny Intern., Inc. v. Allegheny Ludlum Steel Corp., 40 F.3d 1416, 1429 (3d Cir.1994). Accordingly, Pennsylvania state law regarding claim preclusion must be applied to the case at bar. See Marrese v. Am. Acad. of Orthopedic Surgeons, 470 U.S. 373, 381 (1985) (in determining the preclusive effect of a state court judgment, district court must apply the rendering state's law of preclusion).

Under Pennsylvania law, in order for the doctrine of claim preclusion to prevent relitigation of the claim, the two actions must share the following conditions: 1) the thing sued

upon or for; 2) the cause of action; 3) the persons and parties to the action; and 4) the capacity of the parties to sue or be sued. Turner, 449 F.3d at 548, citing Bearoff v. Bearoff Bros., Inc., 458 Pa. 494 (1974). See also Stoeckinger v. Presidential Financial Corp. of Delaware Valley, 948 A.2d 828, 831 (Pa.Super. 2008).

### 3) Analysis

*A final judgment*

Importantly, "res judicata and collateral estoppel apply only to final judgments." McKenna v. City of Philadelphia, 304 Fed. Appx 89, at *4 (3d Cir. 2008). It is at this threshold that Plaintiff has advanced his earlier arguments in opposition to Defendants' previous dispositive motions; Plaintiff argues that the doctrine of claim preclusion cannot apply to this case as there was no final adjudication in the underlying Court of Common Pleas case given that he voluntarily withdrew his complaint. ECF No. 47, pages 3-5.

In support of their present motions for summary judgment, Defendants have provided this Court with documents from the Court of Common Pleas case including: the docket sheet; the complaint; preliminary objections filed by three groups of Defendants; the transcript of the March 1, 2010 proceedings before Judge Dunlavey; and the final order dated April 21, 2010 granting Defendants' preliminary objections and dismissing the case as frivolous. ECF No. 165-1.

The docket sheet from the Court of Common Pleas reveals that the state court case was dismissed on April 21, 2010, when Judge Dunlavey issued the final order granting Defendants' preliminary objections:

> "the complaint is dismissed with prejudice as being frivolous litigation pursued only to harass the Defendants and to further clog the Court's pursuit to administer

justice to those in need of adjudication. The Court stands on the briefs of the Defendants in this matter. The Court further stands on the record of the Oral Argument held March 1, 2010 regarding the issues raised by Defendants and any further argument made by Plaintiff."

ECF No. 20-4, page 2. The docket does not indicate that Plaintiff made any motion, either in writing or verbally, to withdraw his complaint. Indeed, the complete transcript from the March 1, 2010, hearing contains no indication that Plaintiff sought to withdraw or voluntarily dismiss his case.

In opposition, Plaintiff contends that the transcript submitted as evidence by Defendants is not an accurate representation of what occurred at the hearing.[8] At first blush, it would appear that whether Plaintiff withdrew his complaint during that hearing (and consequently, whether the transcript is an accurate representation of events as they occurred) is a factual matter of dispute, thereby precluding summary judgment. However, whether the transcript of the March 1st hearing is inaccurate (and whether Plaintiff sought to voluntarily withdraw that lawsuit) is actually of no moment because the record before this Court (including the docket sheet and the final order) indicate that Judge Dunlavey dismissed Plaintiff's state court case by final order dated April 21, 2010. Even if Plaintiff requested that his case be withdrawn or voluntarily dismissed, Judge Dunlavey would not have had to accept Plaintiff's withdrawal. Pennsylvania Rules of Civil Procedure require that a plaintiff seeking to withdraw a case file a discontinuance upon which the judge must rule. See Pa.R.Civ.P. 229(a) ("a discontinuance shall be the exclusive method of voluntary termination of an action, in whole or in part, by the plaintiff before the commencement of the trial."); Fancsali v. University Health Center of Pittsburgh, 761 A.2d 1159, 1162 (Supreme Ct. Pa. 2000) ("[T]he question is the same whether it is placed before

---

[8] As evidence of the lapses and "alterations" in the transcript, Plaintiff points to "dashes documented in various segments of that document" as evidence that the transcript is incomplete. ECF No. 202, ¶ ¶ 32, 34-35, and 39.

the court by the plaintiff requesting express leave to discontinue or by the defendant seeking to have a discontinuance stricken. Moreover, it is clear that the question is addressed to the court's discretion."). Here, there was no such discontinuance filed on the docket, and the State Court case was ended by an Order adjudicating that the case was dismissed as frivolous. Hence, there was a final adjudication by final Order in the State Court, whether or not Plaintiff sought to withdraw the action at any point.

*Condition One - Identity of the thing sued upon or for*

Plaintiff acknowledges that "the difference between the two complaints is that thee [sic] Plaintiff added a couple more issues and Defendants to the present federal action." ECF No. 202, ¶ 3. The majority of the federal action is identical to the earlier-filed state court action. See ECF No. 6, ¶¶ 7-67, and ¶¶ 71-226 (these paragraphs are identical to the Court of Common Pleas case.)

Apparently, the claims added to this federal action are limited to the following: 1) Nurse Doe smoked a cigarette outside the medical department on November 27, 2010 (ECF No. 6, ¶¶ 4, 233); and 2) Correctional Officers Sommers and Rodriguez failed to intervene on Plaintiff's behalf after they were informed that Plaintiff was denied medical treatment by Defendant Telega in November of 2009 (id. at ¶¶ 5-6).[9]

With the exception of the two items listed above, the facts sued upon are the same.

*Condition Two – Identity of causes of action*

The second element, identity of the cause of action, requires this Court to look to the underlying legal theories of the prior proceeding. The Pennsylvania Superior Court explained

---

[9]  Additionally, other allegations that are new to this federal action involve allegations related to the lack of action on inmate grievances that implicate Defendants Adams, Watson, Varner, and Sobina (¶¶ 227-28, 232). These claims and these Defendants were dismissed in the first Report and Recommendation and Final Order. See ECF No. 49, pages 29-30; ECF No. 96.

that: "A fundamental test applied for comparing causes of action, for the purpose of applying principles of res judicata, is whether the primary right and duty, and delict or wrong, are the same in each action." Dempsey v. Cessna Aircraft Co., 653 A.2d 679, 681 (Pa.Super. 1995) quoting 46 Am.Jur.2d, Judgments § 406. Under this test, "the primary focus should be whether the ultimate and controlling issues have been decided." Id. citing Hammel v. Hammel, 636 A.2d 214, 218 (Pa.Super. 1994).

Again, this prong is satisfied as the majority of the federal complaint is the same as the complaint filed in the Erie County Court of Common Pleas – both complaints assert the same causes of action.

*Conditions Three and Four – Identity of parties to the action*

*and the capacity of the parties*

The majority of the named Defendants in the present federal action were named by Plaintiff as parties in the Court of Common Pleas suit, with the exception of Nurse Doe, Correctional Officers Rodriguez and Sommers, and Drs. Longstreet and Gilreath. ECF No. 6, ¶ ¶ 4-6 (Doe, Rodriguez, and Sommers)[10]; ¶ ¶ 68-69 (Longstreet and Gilreath)[11]. There is nothing to indicate that the parties to the earlier state court action were unable to present their claims or defenses in front of the Court of Common Pleas.

---

[10] Plaintiff alleges that Nurse Doe exposed him to the smoke from a cigarette by smoking near him and Sommers and Rodriguez failed to intervene when he complained about the medical treatment he received from Telega. ECF No. 6, ¶ ¶ 4-6.

[11] Plaintiff alleges: "Dr. Longstreet is one of the individuals who failed to intervene and remedy that matter when it was brought to his attention that thee [sic] Plaintiff's life was placed in harm's way…" and "Dr. Valerie Gilreath is one of the individuals who failed to intervene and remedy that matter when it was brought to his attention that thee [sic] Plaintiff's life was in harm's way. Dr. Valerie Gilreath was responsible for safeguarding the lives of all of the individuals who were housed at SCI Albion…". ECF No. 6, ¶ ¶ 68-69. The claims against these Defendants will be addressed later in this Report and Recommendation.

The four conditions are easily met in this case and the majority of the claims in the present federal action are precluded by the doctrine of res judicata. Accordingly, the motion for summary judgment should be granted in this regard.

The only claims not precluded by the doctrine of res judicata are the claim against Nurse Doe for smoking a cigarette on November 27, 2009, and the claim that Sommers and Rodriguez failed to intervene in Plaintiff's medical treatment around the same time. See ECF No. 6, ¶¶ 4-6. Since these claims against Doe, Sommers and Rodriguez post-date the filing of the complaint in the Court of Common Pleas (around May of 2009), they are not precluded because they could not have been brought in the earlier action.[12] Accordingly, these claims will be addressed on their merits. Additionally, it is unclear from the complaint whether the claims against Longstreet and Gilreath could have been brought in the earlier action as they are undated. Id. at ¶¶ 68-69. Accordingly, these claims will also be addressed separately.

**D. Nurse Doe**

Plaintiff alleges that Nurse Doe violated his constitutional rights by exposing his to ETS.

In order to succeed on an Eighth Amendment claim based on prison conditions, a plaintiff must show: (i) "he has suffered an objectively, sufficiently serious injury," and (ii) "that prison officials inflicted the injury with deliberate indifference." Farmer v. Brennan, 511 U.S.

---

[12] Because the application of claim preclusion does not require that the merits of the claim were actually litigated in an earlier proceeding, a judgment by default may result in a determination of *res judicata* if the four enumerated conditions are satisfied. Zimmer v. Zimmer, 326 A.2d 318 (Pa. 1974). In Pennsylvania, the doctrine of res judicata applies not only to claims actually litigated, but also to claims which could have been litigated during an earlier proceeding if they were part of the same cause of action. R/S Financial Corp. v. Kovalchick, 716 A.2d 1228, 1230 (1998) citing Balent v. City of Wilkes-Barre, 669 A.2d 309, 313 (1995). And conversely, any claims that could not have been litigated in an earlier proceeding are not precluded. See Dithridge House Ass'n v. Dep't of Environmental Resources, 541 A.2d 827, 831 (Pa. Cmwlth. 1988).

825, 834 (1994). The first prong of the <u>Farmer</u> test is an objective one: Plaintiff must

demonstrate that he has been incarcerated under conditions posing a substantial risk of serious

harm. 511 U.S. at 834. In this context, the Eighth Amendment protects against prison

conditions that threaten to cause health problems in the future, not just conditions that cause

immediate medical problems. <u>Helling v. McKinney</u>, 509 U.S. 25, 33-34 (1993) (holding that

prisoner stated cause of action under Eighth Amendment by alleging that prison officials had,

with deliberate indifference, exposed him to levels of environmental tobacco smoke that posed

an unreasonable risk of serious damage to his future health). To meet this objective standard,

however, "the Eighth Amendment requires more than a scientific and statistical inquiry into the

seriousness of the potential harm and the likelihood that such injury to health will actually be

caused by exposure to [the challenged conditions]. It also requires a court to assess whether

society considers the risk that the prisoner complains of to be so grave that it violates

contemporary standards of decency to expose *anyone* unwillingly to such a risk." <u>Id</u>. at 36

(emphasis in original).

The second prong of the <u>Farmer</u> test is a subjective one, requiring plaintiff to

demonstrate that defendants acted with deliberate indifference. To establish deliberate

indifference: 1) a prison official must know of and disregard an excessive risk to inmate health or

safety; 2) the official must be aware of facts from which an inference could be drawn that a

substantial risk of serious harm exists, and 3) the official must also draw the inference. <u>Farmer</u>,

511 U.S. at 837. Thus, "deliberate indifference describes a state of mind more blameworthy than

negligence," and requires "more than ordinary lack of due care for prisoner's interests or safety."

<u>Id</u>. at 835.

Here, the only claim against Nurse Doe is that she smoked a single cigarette near Plaintiff at the medical department's doorway on November 27, 2009. Such an instance of exposure to the environmental tobacco smoke from a single cigarette on one occasion does not rise to the level of a constitutional violation as it is not "expos[ure] to unreasonably high levels of ETS." See Helling, 509 U.S. at 35. Moreover, "Helling did not read the Eighth Amendment as mandating smoke-free prisons." Scott v. Dist. of Columbia, 139 F.3d 940, 942 (D.C.Cir. 1998) ("It is impossible to read any such *per se* rule into Helling's 'objective' element.") Therefore, this claim fails as a matter of law and the motion for summary judgment should be granted in this regard.

### E.    Correctional Officers Sommers and Rodriguez

The claims against Sommers and Rodriguez also fail as a matter of law.

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976).[13] However, non-medical prison officials, such as correctional officers, are not "considered deliberately indifferent simply because they failed to respond

---

[13] The standard is two-pronged, "[i]t requires deliberate indifference on the part of prison officials and it requires that the prisoner's medical needs be serious." West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr'al. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). A serious medical need may also arise "... when a delay in or denial of requested medical treatment causes an inmate to suffer a lifelong handicap or permanent loss." Peterson v. Achebe, 2007 WL 1381753, at * 3 (D.N.J. 2007) citing Lanzaro, 834 F.2d at 347. Meanwhile, deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

directly to the medical complaints of a prisoner who was already being treated by the prison doctor. […]  If a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) quoting Durmer, 991 F.2d at 69.  See also Foreman v. Bureau of Prisons, 2007 WL 108457, at *5 (3d Cir.).  A non-medical supervisory official may only be held liable if there was "knowledge of 'malicious' and 'sadistic' medical mistreatment." Henderson v. Bussanich, 2006 WL 3761998, at *7 (M.D. Pa.), interpreting Spruill, 372 F.3d at 236-37.

In their capacity as corrections officers, these Defendants are not deliberately indifferent if they failed to respond to Plaintiff's medical complaints while he was under the care of medical professionals.  See Spruill, 37 F.3d at 256.  Defendants' reliance on the opinion of medical professionals even as Plaintiff expressed his dissatisfaction with his medical care and treatment does not show that they possessed "knowledge of malicious or sadistic medical mistreatment" so as to impose liability upon them.  See Henderson, 2006 WL 3761998.

The claim against Sommers and Rodriguez fails as a matter of law and the motion for summary judgment should be granted.


### F.  Defendant Gilreath

Plaintiff alleges that "Gilreath is one of the individuals who failed to intervene and remedy that matter when it was brought to his attention that thee [sic] Plaintiff's life was in harm's way.  Dr. Valerie Gilreath was responsible for safeguarding the lives of all of the individuals who were housed at SCI Albion."  ECF No. 6, ¶ 69.

In order for an individual defendant to be found liable in a civil rights action, the individual "must have personal involvement in the alleged wrongdoing; liability cannot be

predicated solely on the operation of *respondeat superior*." <u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005). <u>See</u> <u>also</u> <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976). The supervisor must be personally involved in the alleged misconduct. <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." <u>Thomas v. Independence Twp.</u>, 463 F.3d 285, 298 (3d Cir. 2006) <u>quoting</u> <u>Rode</u>, 845 F.2d at 1207. If an official's only personal involvement is in investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official. <u>Rode</u>, 845 F.2d at 1208. Plaintiff's allegations against Gilreath are not enough to impose personal liability upon him, and so the claims against him should be dismissed.

Additionally, the record before this Court illustrates that Plaintiff did not exhaust his administrative remedies against Gilreath. <u>See</u> ECF No. 161, ¶¶ 96, <u>et</u> <u>seq</u>. The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), provides that "no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted." <u>Id</u>.[14] The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. <u>Porter v. Nussle,</u> 534 U.S. 516 (2002); <u>Cutter v. Wilkinson</u>, 544 U.S. 709, 723 n.12 (2005) (noting that the PLRA requires that "a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies."); <u>Concepcion v. Morton</u>, 306 F.3d 1347 (3d

---

[14] It is not a plaintiff's burden to affirmatively plead exhaustion. <u>Jones v. Bock</u>, 549 U.S. 199, 217 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be raised by the defendants. <u>Ray v. Kertes</u>, 285 F.3d 287, 295 (3d Cir. 2002).

Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. <u>McCarthy v. Madigan</u>, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. <u>Grimsley v. Rodriquez</u>, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).

Alternatively, Defendant Gilreath should be entitled to summary judgment.

**G. Defendants Longstreet and the "State Corrections Officers Association"**

The docket sheet reflects that service has not been accomplished against Longstreet or the "State Corrections Officers Association." More than two years have passed since the filing of this civil rights action (and these Defendants were named as parties to this litigation). As a result, these Defendants should be dismissed from this case pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, as they have not been served within 120 days of the date on which they were named as Defendants in this case. <u>See</u> Rule 4(m) (giving Court authority to dismiss a case after failure to serve).

**III.    CONCLUSION**

For the foregoing reasons, it is respectfully that the motion for summary judgment filed by the Medical Defendants [ECF No. 159] be granted, and the motion for summary judgment filed by the Commonwealth Defendants [ECF No. 164] be granted.

Furthermore, Defendants Longstreet and the State Corrections Officers Association should be dismissed from this case pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. The Clerk of Courts should be directed to close this case.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto. See Fed.R.Civ.P. 72(b)(2). Failure to file timely objections may constitute a waiver of appellate rights. See Brightwell v. Lehman, 637 F.3d 187, 194 n.7 (3d Cir. 2011); Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: June 8, 2012